

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00248-CV

---

RICHARD D. LADD, APPELLANT

V.

ROSS HARMON D/B/A REH, LLC, APPELLEE

---

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 10,149, Honorable Gordon H. Green, Presiding

---

August 21, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Texas cattle disputes rarely involve quiet pastures. Instead, they bring storms of contracts, fraud claims, and questions of liability. This case is no different. At its center stand 512 calves, a commingled herd, and a dispute over who bears responsibility for the loss. The trial court entered judgment against Appellant, Richard D. Ladd, for aiding and abetting fraud. Ladd now appeals raising four issues:

1. The trial court erred by denying his motion for summary judgment on limitations;

2. The trial court lacked subject matter jurisdiction because James Harmon was no longer a party;

3. The evidence was legally and factually insufficient to hold him liable for aiding and abetting fraud; and

4. The trial court erred in denying his motion to modify the judgment under the one recovery rule.

We affirm.

## BACKGROUND

In 2016, REH purchased 512 calves for $54,895. James Harmon, acting through Blackcross Genetics, LLC, agreed to pick up the calves and deliver them to Coyote Lake Feedyard. Ladd owned Blackcross Genetics, and Harmon served as its manager and only employee.

Instead of placing the calves under "Ross Harmon/REH," James Harmon placed them under "Southridge," a fictitious name he also used for his own cattle.[1] This commingled REH's cattle with Harmon's. Later, Harmon, through Blackcross Genetics, contracted with Coyote Lake to supply 50 Holstein calves per week, drawing from REH's cattle. Both Harmon and Ladd signed the contract.

When the cattle were sold, Coyote Lake paid $532,000 in proceeds to Blackcross Genetics. REH received nothing for its calves. REH sued Coyote Lake, Blackcross Genetics, and Ladd, later amending its pleadings to assert aiding and abetting fraud. Coyote Lake settled and Harmon died, leaving Ladd and Blackcross as the remaining

---

[1] Ross is James's son. To avoid confusion, Ross will be referred to as "REH" and James will be referred to as "Harmon."

defendants.  After a bench trial, the court found for REH and entered judgment against Ladd and Blackcross, jointly and severally.

**ANALYSIS**

### ISSUE ONE—DENIAL OF SUMMARY JUDGEMENT

The denial of a motion for summary judgment where the case was later tried on the merits is not reviewable on appeal.  *Carr v. Weiss*, 984 S.W.2d 753, 760 (Tex. App.—Amarillo 1999, pet. denied).

Ladd argues the denial of his motion for summary judgment on limitations was incorrect.  However, Ladd did not re-urge his limitations defense at trial or in a post-trial motion.  By failing to preserve the issue, he waived appellate review.  TEX. R. APP. P. 33.1. Issue one is overruled.

### ISSUES TWO AND THREE—SUBJECT MATTER JURISDICTION AND SUFFICIENCY

Ladd's second and third issues are interrelated.  In his jurisdictional challenge, he argues the trial court lacked subject matter jurisdiction because Harmon, the alleged tortfeasor, was not a party and later died.  But this contention blurs the distinction between jurisdiction and the merits.  Whether the elements of fraud or aiding and abetting fraud were established goes to sufficiency, not jurisdiction.  The question is not whether the original fraudster is a party, but whether sufficient evidence exists that a fraud occurred to support the aiding-and-abetting claim.

First, regarding jurisdiction, we review jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). District courts are courts of general jurisdiction and are presumed to have authority to hear cases unless shown otherwise. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). Texas courts plainly have jurisdiction over fraud claims, including aiding and abetting fraud. Thus, the trial court properly exercised jurisdiction. *Renate Nixdorf GmbH & Co. KG v. TRA Midland Props., LLC*, No. 05-17-00577-CV, 2019 Tex. App. LEXIS 26, at *14 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.). *See also In re Coats*, 580 S.W.3d 431, 436 (Tex. App.—Texarkana 2019, no pet.) (death of a party does not deprive trial court of subject matter jurisdiction).

The question then becomes whether sufficient evidence supports the judgment. Bench trial findings are reviewed under the same standards as jury verdicts. *AvenueOne Props. v. KP5 Ltd. P'ship*, 540 S.W.3d 643, 646 (Tex. App.—Amarillo 2018, no pet.). When no findings of fact or conclusions of law are filed, the judgment implies all findings necessary to support it. *Mo. Pac. R. Co. v. Limmer*, 299 S.W.3d 78, 84, n.29 (Tex. 2009); *Vermillion v. Vermillion*, No. 07-20-00111-CV, 2022 Tex. App. LEXIS 7337, at *12 (Tex. App.—Amarillo Sept. 30, 2022, no pet.) (mem. op.).

To prevail on aiding and abetting fraud, a plaintiff must prove a defendant, with unlawful intent, gave substantial assistance and encouragement to a wrongdoer in a tortious act. *Renate Nixdorf GmbH & Co. KG*, 2019 Tex. App. LEXIS 26, at *14. Here, the record contains ample evidence of fraudulent conduct by Harmon:

- Harmon placed 512 calves under the "Southridge" name at the feedyard without REH's permission.

4

- Harmon commingled cattle in a single account, including Holstein steers and cattle belonging to REH, under the Southridge label.

- Ladd himself testified that he was "pretty sure" REH owned the 512 calves Harmon put into the Southridge program.

- Ladd further admitted he believed Harmon was perpetuating fraud against REH.

There is also evidence of Ladd aiding and abetting:

- Ladd signed the "feed and care" contract that enabled REH's calves to be supplied under the Southridge name.

- Ladd knew REH had calves at Coyote Lake and was owed $50,000–$60,000.

- Ladd entered a security agreement pledging all Southridge cattle, including REH's calves, as collateral.

This evidence is legally sufficient to support the trial court's finding that Ladd knowingly assisted Harmon in committing fraud. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The evidence is also factually sufficient to support the trial court's finding. *Crosstex N. Tex. Pipeline*, *L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016). The judgment is not clearly wrong or unjust. *Wilson*, 168 S.W.3d at 826. Issues two and three are overruled.

**ISSUE FOUR—DENIAL OF MOTION TO CORRECT, AMEND, OR REFORM JUDGMENT**

We review the denial of a motion to modify judgment under an abuse of discretion standard. *In the Interest of K.B.L*., No. 07-16-00285-CV, 2017 Tex. App. LEXIS 9973, at *4 (Tex. App.—Amarillo Oct. 24, 2017, no pet.) (mem. op).

Ladd argues the trial court erred by denying his Amended Motion to Modify, Correct, or Reform Judgment, seeking a settlement credit and change to prejudgment

interest calculation. REH responds Ladd waived this issue by failing to raise it at trial, and that the trial court had independent grounds to deny the motion.

We do not need to reach the question of whether settlement credit evidence must be presented at trial or after judgment, because the trial court had sufficient reason to deny the Amended Motion: Ladd miscalculated prejudgment interest. Under the Finance Code, prejudgment interest accrues on the earlier of (1) the 180th day after the defendant receives written notice of the claim, or (2) the date suit is filed. TEX. FIN. CODE ANN. § 304.104. Ladd denied receiving pre-suit notice, but he admitted seeing notice letters in June 2017, including a June 22, 2017 letter sent to Blackcross Genetics and Richard D. Ladd. The June 22 letter sent to Ladd included a demand for payment. Prejudgment interest therefore began earlier than Ladd alleged in his Amended Motion.[2]

Even if the trial court had concluded Ladd was entitled to a settlement credit, it could still properly deny the Amended Motion. A motion to modify must specify the respects in which the judgment should be modified, corrected, or reformed. TEX. R. CIV. P. 329b(g). Ladd requested very specific relief as follows:

> Modify, Correct and Reform the Court's Judgment rendered August 18, 2023 to $22,346.00.

To grant that relief, the trial court would have had to agree both on the settlement amount and the prejudgment interest calculation. Ladd failed to prove the prejudgment interest calculation, and that alone provides a sufficient basis to deny the motion. Issue four is overruled.

---

[2] Ladd alleged December 20, 2020.

**CONCLUSION**

Having overruled all of Ladd's issues, we affirm the trial court's judgment.


Alex Yarbrough
Justice